**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Ronnie Dean PURDY, Defendant–**
**Appellant.**

**No. 00–30168.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted March 6, 2001

Filed Aug. 31, 2001

---

———

Christina L. Hunt, Federal Defenders of Eastern Washington and Idaho, Spokane, Washington, for the defendant-appellant.

Jane M. Kirk, Assistant United States Attorney, Yakima, Washington, for the plaintiff-appellee.

Before: PREGERSON, THOMAS, and GOULD, Circuit Judges.

PREGERSON, Circuit Judge:

Ronnie Dean Purdy ("Purdy") challenges the constitutionality of his federal court conviction as "an unlawful user of ... a[ ] controlled substance" in possession of a firearm, in violation of 18 U.S.C. § 922(g)(3). Specifically, Purdy claims that he was convicted in violation of due process because the definition of "unlawful user" contained in § 922(g)(3) is too vague to supply him with adequate notice that his

conduct was prohibited. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.

## I.

## FACTS and PROCEDURAL HISTORY

On July 8, 1999, Drug Enforcement Administration ("DEA") agents responded to a report that a methamphetamine laboratory was operating out of a house located at 442 Plank Road in Toppenish, Washington. The agents went to the house and interviewed Purdy, who stated that he lived there alone. The agents searched the house and found a .22 caliber rifle on the table in the living room and a glass pipe containing methamphetamine residue. In later interviews, Purdy told the agents that he was the owner of the .22 caliber rifle, that he used marijuana, and that he used methamphetamine and "everybody knew it."

On September 14, 1999, Purdy was indicted by a federal grand jury in the Eastern District of Washington as "an unlawful user of a controlled substance" in possession of a firearm, in violation of 18 U.S.C. § 922(g)(3).

At trial, DEA Agent Carter Mansfield testified to the facts outlined above. Purdy's friend, Jody Henderson ("Henderson"), also testified. Henderson testified that she had known Purdy for about four years. She stated that during the first two years of their acquaintance, she saw Purdy on a weekly basis and that Purdy used cocaine. She stated that for the past two years she and Purdy had seen each other about "once a month," and that they smoked marijuana and methamphetamine "[p]robably half" of those times. Henderson testified that she had smoked marijuana with Purdy in his home two days before his gun was seized by DEA

agents. Henderson also testified that on the day Purdy's gun was seized, she and Purdy smoked methamphetamine together at her house.

After the prosecution rested, the defense moved for a judgment of acquittal.[1] In arguing the motion, defense counsel asserted that the term "unlawful user" was unconstitutionality vague as applied to Purdy. Defense counsel stated that Henderson's testimony regarding Purdy's drug use established only that Purdy smoked methamphetamine "once every two months," which counsel asserted was not frequent enough to put Purdy on notice that he would qualify as a "user" of drugs under § 922(g)(3). The court denied the motion on the grounds that there was evidence of "consistent use of drugs" and the use of drugs "maybe the night before the gun was found in the home."

The jury found Purdy guilty of violating § 922(g)(3). On May 17, 2000, Purdy was sentenced to one year in prison, two years of supervised release, and charged with a $100 special assessment. Purdy timely appeals.

## II.

### STANDARD OF REVIEW

■ We review de novo a challenge to the constitutionality of a statute on void for vagueness grounds. *United States v. Cooper*, 173 F.3d 1192, 1202 (9th Cir.1999). Where, as here, a statute is challenged as unconstitutionally vague in a cause of action not involving the First Amendment, we do not consider whether the statute is unconstitutional on its face. *United States v. Ocegueda*, 564 F.2d 1363, 1365 (9th Cir.

1977) (citations omitted). Instead, "our concern is whether the [statute] is impermissibly vague *in the circumstances of this case." Id.* (emphasis added).

## III.

### 18 U.S.C. § 922(g)(3) IS NOT UNCONSTITUTIONALLY VAGUE AS APPLIED

■ The resolution of this void-for-vagueness challenge turns on whether the language of § 922(g)(3) put Purdy on notice that his conduct was criminal. *See Grayned v. City of Rockford*, 408 U.S. 104, 108, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972) ("It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined."). Section 922(g)(3) provides:

> It shall be unlawful for any person ... who is *an unlawful user of or addicted to any controlled substance* (as defined in section 102 of the Controlled Substances Act (21 U.S.C. § 802)) ... *to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm* or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

18 U.S.C. § 922(g)(3) (West 2000) (emphasis added).

Based on the facts established at trial, there is no doubt that Purdy possessed a firearm. Nor is there any doubt that Purdy smoked methamphetamine and marijuana, which are defined as controlled substances under federal law. *See* 21 U.S.C. §§ 802, 812, scheds. I, III. The only ques-

---

1. Federal rule of criminal procedure 29(A) provides, in part:

> The court on motion of a defendant or of its own motion shall order the entry of judgment of acquittal of one or more offenses charged in the indictment or information after the evidence on either side is closed if the evidence is insufficient to sustain a conviction of such offense or offenses.

FED. R. CRIM. P. 29(a).

812

tion is whether § 922(g)(3) provided Purdy with sufficient notice that the manner and extent to which he smoked marijuana and methamphetamine qualified him as an "unlawful user of ... a[ ] controlled substance." 18 U.S.C. § 922(g)(3).

In *Ocegueda*, 564 F.2d at 1364–65, we confronted a constitutional challenge to § 922 similar to the one that Purdy raises here.[2] Ocegueda was convicted of "knowingly receiving firearms" while being "an unlawful user ... of" heroin. *Id.* at 1364. On appeal, Ocegueda challenged the conviction claiming that the term "unlawful user" was unconstitutionally vague as applied to him. *Id.* at 1364–65. We rejected this claim because: (1) Ocegueda had a six-year history of heroin use leading up to his arrest; and (2) "[c]ircumstantial evidence and the admissions of [Ocegueda] clearly show the continued use of heroin during the period of the gun purchases." *Id.* at 1364. Specifically, the evidence showed that Ocegueda's heroin habit "date[d] from 1970" and that Ocegueda used heroin "at least ten times from March to August, 1976," which was during the period that he purchased the firearms. *Id.*

In *Ocegueda*, we stated that while the term "unlawful user" was not defined in the statute or its legislative history, "a common sense meaning of the phrase clearly includes the conduct of appellant" because Ocegueda's heroin use was consistent, "prolonged," and contemporaneous with his firearms purchases. *Id.* at 1365–66. We also found that our determination was supported by "the statutory history," which indicated that § 922 was enacted "to keep firearms out of the hands of those not legally entitled to possess them because of ... [their] criminal background." *Id.* at 1365–66. Specifically, we noted that § 922

explicitly included unlawful drug users as individuals having a "criminal background," and that Ocegueda fit within this class because of his "prolonged use of heroin," an "unlawful" drug. *Id.* at 1366.

Purdy contends that unlike Ocegueda, his drug use was too "infrequent" and inconsistent to put him on notice that he could be classified an "unlawful user" of drugs. We disagree. Henderson's testimony at trial established that Purdy, like Ocegueda, had used illegal drugs—cocaine, methamphetamine, and marijuana—on a regular basis for years, and that he had smoked methamphetamine and marijuana contemporaneously with his possession of a firearm. Under *Ocegueda*, this evidence establishes that Purdy's drug use was sufficiently consistent, "prolonged," and close in time to his gun possession to put him on notice that he qualified as an unlawful user of drugs under § 922(g)(3). *Ocegueda*, 564 F.2d at 1365.

We note, however, that the definition of an "unlawful user" of drugs is not without limits. Indeed, in *Ocegueda* we concluded our analysis by stating:

> Had Ocegueda used a drug that may be used legally by laymen in some circumstances, or *had his use of heroin been infrequent and in the distant past,* we would be faced with an entirely different vagueness challenge to the term "unlawful user"....

564 F.2d at 1366 (emphasis added).

█ We think this language bears repeating. The facts of this case establish beyond doubt that Purdy's drug use, like that of Ocegueda, was sufficient to put him on notice that he fell within the statutory definition of "unlawful [drug] user." We emphasize, however, that to sustain a con-

---

**2.** At the time that Ocegueda was prosecuted, the statute outlawing the possession of a firearm by an unlawful drug user was classified

under 18 U.S.C. § 922(h)(3). *Ocegueda*, 564 F.2d at 1364 n. 2. In 1986, that statute was recodified as 18 U.S.C. § 922(g)(3).

viction under § 922(g)(3), the government must prove—as it did here—that the defendant took drugs with regularity, over an extended period of time, and contemporaneously with his purchase or possession of a firearm.

## CONCLUSION

Under the law of this circuit, these established facts concerning Purdy's drug use were sufficient to put him on notice that his conduct was criminal under § 922(g)(3). We find, therefore, that § 922(g)(3) is not unconstitutionally vague as applied.

AFFIRMED.